**Judy M. STRATMAN, Respondent,**

v.

**Harold B. STRATMAN, Appellant.**

**No. WD 51709.**

Missouri Court of Appeals,
Western District.

June 30, 1997.

Reginald H. Turnbull, Riner & Turnbull, Jefferson City, for appellant.

Michael P. Riley, Carson & Coil, Jefferson City, for respondent.

Before LOWENSTEIN, P.J., and BRECKENRIDGE and SMART, JJ.

BRECKENRIDGE, Judge.

Harold B. Stratman (Husband) appeals from the trial court's judgment dissolving his marriage to Judy M. Stratman (Wife). Husband contends that the trial court erred by: (1) including as marital property certain real estate acquired by Husband after the effective date of the parties' dissolution; (2) using debts incurred by Wife after the effective date of the parties' dissolution as an offset against Wife's assets before equalizing the property division; (3) offsetting Wife's attorney fees incurred in the parties' original dissolution hearing; (4) awarding the value of certain personal property to Husband because that property was not wanted by Husband, two guns were nonmarital property, and one gun was a gift; (5) failing to include in the marital property division a certificate of deposit; and (6) not recognizing Husband's nonmarital contribution of $26,762 to the value of the marital residence.

The judgment dividing the marital property is affirmed in part and reversed in part. Under Rule 84.14, this court enters the judgment which the trial court should have entered.

Husband and Wife were married on February 14, 1977. The parties lived together in Freeburg, Missouri. Wife had three children from a previous marriage: Joseph Luebbert, James Luebbert, and Jennifer Luebbert. One child was born of the marriage on December 17, 1977, Harold B. Stratman, Jr. During the marriage, Husband owned and operated his own business as an electrician, while Wife cleaned houses, babysat, and assisted Husband with the bookkeeping aspects of his business.

On April 21, 1994, Wife filed her Petition for Dissolution of Marriage in the Circuit Court of Osage County. Husband admitted in his answer that the marriage was irretrievably broken and filed a Counter-Petition for Dissolution of Marriage. On August 3, 1994, the trial court heard the cause and entered its Decree of Dissolution purporting to dispose of the entire case. The court's order dissolved the parties' marriage and made further orders regarding child custody, support, and visitation, and the division of property and debts. The court did not award maintenance or attorney fees to either party.

Thereafter, Wife filed a motion for a new trial, alleging that the "division of marital and non-marital property [was] against the weight of the evidence and not supported by the evidence." The division of property was the only portion of the decree challenged by Wife in her motion. Wife requested the trial court to set aside the division of property and reallocate the parties' separate and marital

property. The trial court sustained Wife's motion for a new trial with the division of property as the sole issue to be relitigated. The trial judge who presided over the initial hearing recused himself, a new judge was assigned, and venue was subsequently changed to Cole County.

On August 11, 1995, nearly a year after the date of the initial decree of dissolution, the issue of the division of property was reheard in the Circuit Court of Cole County. The parties stipulated on the record at the beginning of the hearing that "the original dissolution has gone through with the exception of property division." Husband and Wife offered evidence of marital and separate property, and each submitted a proposed division of the property.

On September 7, 1995, the trial court entered its Final Judgment Entry and Order. In this order, the trial court recognized that the parties' marriage was dissolved as of August 3, 1994. It then entered orders dividing the parties' property "based on its finding that each party should share as equally as possible in the marital property." The judgment incorporated Wife's Exhibit 1 by reference, which set forth her proposed division of property. The court modified the proposed property division in Wife's Exhibit 1 to conform to the parties' testimony and attached the modified exhibit to the judgment. The court found that this exhibit, as "supplemented and modified by other evidence, recapitulates [the parties'] assets and obligations with reasonable accuracy."

The decree set off to Wife, as her separate nonmarital property, the parties' residence which had been acquired by her prior to the marriage. Husband was awarded certain real property in Freeburg, Missouri, which he purchased in September, 1994, about a month after the initial decree of dissolution. Various items of personal property were divided between the parties according to Wife's Exhibit 1, including several certificates of deposit jointly held by the parties and their children, life insurance policies, securities and other investments. The court included as marital property Husband's "pre 8/3/94 unreported receivables" from his electrician

business and the marital funds expended to clear title to Wife's separate property. Husband filed a timely appeal to this court.

■ On appeal, this court affirms the trial court's decree of dissolution if it is "supported by substantial evidence, is not against the weight of the evidence, and neither erroneously declares nor applies the law." *Hutcherson v. Hutcherson,* 909 S.W.2d 403, 404 (Mo.App.1995). This court accepts the evidence and inferences therefrom most favorable to the trial court's decree and disregards all contrary evidence. *Id.* The trial court has substantial discretion in dividing marital property and this court will not interfere unless the division is so heavily weighted in favor of one party as to amount to an abuse of discretion. *Id.* at 406.

■ In his first point, Husband claims that the trial court erred in including as marital property Husband's real estate in Freeburg, Missouri, which was purchased after the date the court dissolved the marriage of the parties. Husband argues that property acquired after the decree of dissolution was entered is not marital property subject to division under § 452.330, RSMo 1994.[1] Husband claims that this erroneous inclusion of his separate property prejudiced him because the court ordered him to pay additional cash to Wife to equalize the property division.

In a proceeding for division of property, the trial court is required to make an equitable division of the parties' marital property after considering all relevant factors. Section 452.330.1; *Hernandez v. Hernandez,* 872 S.W.2d 161, 166 (Mo.App.1994). Subsection three of § 452.330 provides that "[a]ll property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation or dissolution of marriage is presumed to be marital property...." Section 452.330.3 creates the presumption that property aquired during the marriage is marital property. *Hanson v. Hanson,* 738 S.W.2d 429, 433 (Mo. banc 1987). "Conversely, property acquired prior to the marriage or after

1. All statutory references are to the Revised Statutes of Missouri 1994, unless otherwise noted.

the entry of decree of legal separation or dissolution is not marital property." *Id.*

Here, the trial court dissolved Husband and Wife's marriage on August 3, 1993. Thereafter, the trial court sustained Wife's motion for a new trial on the sole issue of the division of property. Section 452.360 defines a final order in the dissolution context:

1. A decree of dissolution of marriage or of legal separation is final when entered, subject to the right of appeal. An appeal from a decree of dissolution that does not challenge the finding that the marriage is irretrievably broken does not delay the finality of that provision of the decree which dissolves the marriage beyond the time for appealing from that provision, so that either of the parties may remarry pending appeal.

Since the order for a new trial did not include the issue of the dissolution of the parties' marriage and neither party appealed the order dissolving the marriage, the trial court's order dissolving the parties' marriage was final on September 12, 1994.

If the general rule, as stated in § 452.360.1, controls, any property acquired by either Husband or Wife after September 12, 1994 would be that party's separate, non-marital property. However, the term "acquired," within the context of § 452.330 for determining whether property is marital for distribution purposes, cannot be read alone. *Hoffmann v. Hoffmann,* 676 S.W.2d 817, 824–25 (Mo. banc 1984). It should be interpreted in accordance with the "source of funds" rule whereby "the character of the property is determined by the source of funds financing the purchase," and the property is considered to be acquired as it is paid for. *Id.* Thus, if marital property is the source of funds for the purchase of property after the date a decree of dissolution is entered, the property retains its character as marital property. A party cannot unilaterally convert marital property which has not been divided in a dissolution proceeding into separate property by simply changing its form. Finally, in dividing the marital property, the trial court must consider the property's value as of the date of the hearing for the division of property. *Taylor v. Taylor,*

736 S.W.2d 388, 391 (Mo. banc 1987); *In re Marriage of Gustin,* 861 S.W.2d 639, 643 (Mo.App.1993).

The source of the $7,500 Husband used to purchase the Freeburg real estate was the subject of testimony at trial. The real estate was purchased less than a month after the decree of dissolution was entered. Husband testified that he paid for the property by two checks written at different times. One check for $2,500 was written on September 5, 1994. According to Husband, the money used to pay for the real estate was business income from bills that had been sent out after August 3, 1994. When asked if he earned $7,500 per month in his business, Husband did not respond to the question, but stated instead that there were many months that he did not bill too much. He testified that he might have had work completed, as well as work in progress, on the date of the dissolution decree. He also stated that he frequently billed a month after a job was finished in order to ensure the customer's satisfaction. When asked why he did not disclose business accounts receivable when his deposition was taken, Husband responded that he did not believe that customers owed him for work performed prior to billing.

During further cross-examination by Wife's attorney, Husband testified concerning the billing practices of his business:

Q. All right. Now, do you remember when you told me that you had acquired these lots and that both you and Herbert had paid $7,500 each?

A. No. I paid $7,500 and he paid me half of $7,500.

Q. All right. Now, the money that you received to make that payment was actually funds that were acquired during the marriage, weren't they?

A. No. It was money I received after the divorce.

Q. I didn't ask you whether—it was money that was for work done prior to the divorce, wasn't it?

A. No.

Q. Is that correct?

A. It was money received after the divorce was final.

Q. I see. Well, but you didn't bill there for a while while the divorce was going on, did you?

A. I figured if I wanted to bill somebody, that's my privilege. I can bill them when I want to.

Q. Right. And if you wanted to hide the income, you just don't send any bills, right?

A. I didn't try to hide no income.

From the totality of Husband's testimony, the trial court could have reasonably inferred that the Freeburg real estate was purchased with money collected on accounts receivable from Husband's electrical business for work performed prior to the date the decree of dissolution was entered. Since, the source of the funds used to purchase the Freeburg property was marital income, the trial court did not err in treating the Freeburg lots as marital property. Point one is denied.

Husband's points two and three both claim that the trial court erred by including Wife's separate debts as offsets against the property awarded to Wife, before computing the money judgment in Wife's favor to equalize the property division. In his second point, Husband specifically objects to a credit for the $5,000 Wife claims she borrowed from her son, because it was derived from an asset jointly titled in the names of Husband, Wife and Wife's son. Husband also argues that the debts of $5,000 owed to Wife's son and $2,500 owed to Wife's daughter were duplicative of attorney fees, and were not marital debts since they were incurred after the date of dissolution. Husband further claims in his third point that the trial court erred in offsetting against marital property Wife's indebtedness of $999.00 for attorney fees incurred in the August 3, 1994 dissolution hearing because, in the August 3, 1994 decree, the trial court did not award attorney fees. Because the parties stipulated that the only issue to be retried on August 11, 1995 was the division of property, Husband argues that collateral estoppel or res judicata bars consideration of Wife's attorney fees in the subsequent proceeding to divide the property.

Wife was originally represented in the dissolution proceeding by Vonietta Trickey. Af-

ter the entry of the decree of dissolution on August 3, 1994, wife retained new counsel and filed a motion for a new trial on the issue of division of property. On the date the property division issues were retried, there was evidence that Wife still owed Ms. Trickey $999; she owed her son James Luebbert $5,000 and her daughter Jennifer Luebbert $2,500 for the money she borrowed to pay her new counsel; and she had incurred an additional sum of $278.72 for attorney fees and expenses. Wife also testified that she was indebted $1,300 to Missouri Valley College for her daughter Jennifer's tuition.

In the Final Judgment Entry and Order, the trial court ordered Wife to pay her debts to Vonietta Trickey, James Luebbert, Jennifer Luebbert, and Missouri Valley College. In computing the cash award in favor of Wife to achieve an equal division of the property, the trial court offset these debts against the value of the assets Wife was receiving. The court also ordered Husband to pay his own attorney fees and $2,500 of Wife's attorney fees. Wife was to be responsible for the balance of her attorney fees.

■ There is no merit to Husband's argument that the trial court was precluded from including Wife's debts in the property division because they were primarily incurred for attorney fees. There was evidence that Wife owed $999 to her first attorney and that the total amount of fees and expenses incurred by her current counsel was $7,778.72. After her motion for new trial was sustained, Wife was required to utilize the services of an attorney to discover marital assets which were not disclosed at the original dissolution hearing on August 3, 1994, and to present her case at the retrial on the issue of the division of property. Husband does not argue that Wife's attorney fees are unreasonable or excessive. There is no reason that a debt for attorney fees should not be considered in the division of property.

■ Husband's claim in his third point that res judicata or collateral estoppel bars consideration of Wife's $999 debt to her first attorney in the division of property is also without merit. The principles of res judicata include issue preclusion, which prohibits par-

ties from re-litigating issues previously adjudicated. *Baldwin v. Baldwin,* 926 S.W.2d 912, 913 (Mo.App.1996). Apart from the issue of whether the original dissolution proceeding and the subsequent new trial qualify as separate proceedings, a controlling factor for both collateral estoppel and res judicata is that there must be an identity of issues. *Missouri Mexican Products v. Dunafon,* 873 S.W.2d 282, 284 (Mo.App.1994)(identity of issues is considered when determining appropriateness of collateral estoppel); *Champ v. Malon,* 905 S.W.2d 90, 92 (Mo.App.1995)(lack of identity of issues barred the application of res judicata). The issue of the award of attorney fees at the prior dissolution hearing is not identical to the issue of division of property. Therefore, neither res judicata nor collateral estoppel has any application to this case.

 Under § 452.330.1(1), the trial court must divide the marital property in such proportions as the court deems just after consideration of all relevant factors, including each spouse's "economic circumstances . . . at the time the division of property is to become effective. . . ." The term "economic circumstances," when given its plain and ordinary meaning, does not limit the court's consideration to marital debts and exclude consideration of a spouse's individual debts. *See In re Marriage of Sumner,* 777 S.W.2d 267, 274 (Mo.App.1989)(appellate court considered separate debt of party in determining whether trial court's division of property was an abuse of discretion). It is a broad term, *Cofer v. Price–Cofer,* 825 S.W.2d 369, 375 (Mo.App.1992), and encompasses each spouse's separate property, as well as separate debts. The statute also establishes that the relevant time frame is "at the time the division of property is to become effective," not the time a decree of dissolution is entered. Section 452.330.1(1). The trial court did not err in considering Wife's separate debts in existence on August 11, 1995 in its division of the marital property. *See In re Marriage of Wells,* 850 P.2d 694, 695–96 (Colo.1993).

 Husband further argues that since Wife, as a joint tenant, could have cashed the Maries County Certificate of Deposit # 12049

(CD # 12049) to pay for her attorney fees, the trial court erred in permitting her to claim an indebtedness to her son, James Luebbert, for "borrowing" $5,000 from the proceeds of the CD. The certificate was worth $5,691 when it was cashed. James Luebbert, as a joint tenant on the CD, had the legal right to cash the CD and receive its proceeds. Section 362.470.1; *Matter of Tepen,* 599 S.W.2d 533, 535 (Mo.App.1980). While the trial court would have been justified in looking behind the "loan" of the proceeds of the CD to Wife and refusing to offset the $5,000 indebtedness of Wife to James Luebbert, it was also within the court's discretion to accept the transaction as a legitimate loan. The trial court has "considerable discretion in determining how and in what manner the property and debts should be divided." *Klein v. Klein,* 837 S.W.2d 567, 569 (Mo.App.1992). Although this court might have reached a different result, it cannot substitute its judgment for that of the trial court. *Gerard v. Gerard,* 825 S.W.2d 21, 23 (Mo.App.1992). The trial court did not abuse its discretion in recognizing Wife's indebtedness to her son.

 There is one claim in Husband's second point which is meritorious. Husband claims it was error for the trial court to offset Wife's share of marital assets by the full amount of her $7,500 indebtedness for attorney fees when Husband was ordered to pay $2,500 of Wife's attorney fees. The effect of the judgment against Husband is that Wife will be reimbursed $2,500 of the $7,500 debt she incurred for attorney fees and expenses. The circumstances of this case indicate that Wife will be able to collect the $2,500 judgment against Husband, so her net debt for attorney fees for the new trial on property issues will be $5,000. She should have been given a credit in that amount, not for an indebtedness of $7,500. The judgment against Husband and in favor of Wife for $81,294.50 is reversed. Pursuant to Rule 84.14, in the absence of injustice, this court is required to finally dispose of the case. *Pike v. Pike,* 609 S.W.2d 397, 400 (Mo. banc 1980). Thus, paragraph 6 of the trial court's judgment dated August 11, 1995, is modified to reduce the money judgment entered against

Husband and in favor of Wife from $81,-294.50 to $78,794.50. Husband is ordered to pay Wife the sum of $78,794.50 to equalize the division of property. The terms for payment in paragraph six of the trial court's judgment of September 7, 1995 are affirmed without modification. Remand is unnecessary. *Id.*

Husband's fourth point asserts that the trial court erred in its division of property by (1) awarding him a satellite dish which he did not want and which was attached to Wife's property; (2) treating two guns, which were acquired by Husband prior to the marriage, as marital property; and (3) treating a gun, which Husband alleged was a gift from Wife to Husband during the marriage, as marital property.

■ As stated previously, the trial court has considerable discretion in dividing marital property in a dissolution proceeding and its division will not be disturbed on appeal unless there is an abuse of discretion. *Klein,* 837 S.W.2d at 569. In the exercise of its discretion, the trial court is not bound to accept either party's proposal for the division of property. The court can award property to a party even though that party indicates that the property is not desired. *See Knapp v. Knapp,* 874 S.W.2d 520, 525 (Mo.App. 1994). Here, both parties testified that they did not want the satellite dish. The court was compelled to award it to one of them. There was no evidence that it was impossible or unduly burdensome for Husband to remove the satellite dish from Wife's property. The trial court did not abuse its discretion in awarding the satellite dish to Husband.

■ Husband also claims that the trial court erroneously included in Husband's share of the marital assets a 12–gauge Remington shotgun and a .22 rifle. Husband testified that there was only one Remington shotgun and one .22 rifle, both of which he acquired prior to the marriage. Wife presented conflicting evidence that there were two Remington shotguns and two .22 rifles. She claimed two of these guns were marital property and two were Husband's separate property. The Final Judgment Entry and Order lists a Remington shotgun and a .22 rifle as marital property and a Remington shotgun and a .22 rifle as Husband's separate property. Obviously, the trial court resolved the conflict in the evidence in favor of Wife. A trial court's determination of the credibility of the witnesses will not be disturbed on appeal. *Hutcherson,* 909 S.W.2d at 404.

■ Husband next argues that it was error for the court to classify a Browning shotgun, which he claims Wife gave to him during the marriage, as marital property. He cites *In re Marriage of Cochran,* 840 S.W.2d 876, 879–80 (Mo.App.1992), for the principle that a gift from one spouse to the other during the marriage is the separate property of the recipient. The trial court did not err in classifying the Browning shotgun as marital property. The only evidence on the issue was Husband's testimony that the Browning shotgun was given to him by Wife. However, the trial court was not required to believe this testimony, even though it was uncontradicted by Wife. *Heineman v. Heineman,* 768 S.W.2d 130, 140 (Mo.App.1989). Therefore, the trial court did not err by including the shotgun in the marital property awarded to Husband. Point denied.

■ Husband's fifth point asserts that the trial court erred in failing to distribute all of the marital property as mandated by § 452.330. In particular, he argues that the trial court failed to include as marital property CD # 12049 in the amount of $5,691. To support this contention, Husband argues that the certificate is presumed to be marital property under § 452.330.3 because it was acquired with marital funds after the marriage of the parties and before the entry of the decree of dissolution on August 3, 1994. He further alleges that Wife, as joint owner, had full access to the certificate to use for attorney fees. As noted previously, Husband also objects to recognition of the loan made to Wife for her attorney fees by Wife's son who, as a joint tenant, cashed the CD.

The certificate was purchased on January 12, 1992 in the names of Husband, Wife, and Wife's son James Luebbert, with an initial balance of $5,112.15. The funds in the certificate originated from James Luebbert's savings account and the marital checking account. The exact contributions from each

account are unknown, but there is the inference that the majority of the funds were derived from the marital checking account. Specifically, Wife was asked if the amount contributed from James Luebberts' savings account was "[a] couple of hundred dollars." She responded, "No. It was probably more than that. Everything [he] had gotten for like birthdays and graduations and stuff like that." She further testified that the parties had made a contribution of approximately $1,500 and then "added on" when they had extra funds.

It is undisputed that the certificate existed on August 3, 1994, the date of the initial dissolution hearing. The exact date CD # 12049 was liquidated is unknown, but it was before the new trial on August 11, 1995. At the new trial, Wife testified that her son, James, had cashed the certificate and loaned her $5,000 to pay the attorney who represented her during the new trial. When asked at the August 11, 1995 hearing why CD # 12049 was not included in her proposed division of property, Wife stated that "we had used that one so I didn't count it."

■ In *Meltzer v. Meltzer*, 775 S.W.2d 120 (Mo. banc 1989), the Supreme Court reiterated the applicable rule for an appeal of a dissolution proceeding where property not disposed of by the trial court's order is discovered before the time for appeal has expired:

> If the undistributed property is discovered before the time for appeal has run, the appellate court, when presented with an appeal raising the issue of undistributed property, must dismiss the appeal because the trial court has not exhausted its jurisdiction and has not rendered a final judgment from which an appeal can be taken.

*Id.* at 120–21 (quoting *State ex rel. McClintock v. Black*, 608 S.W.2d 405, 406 (Mo. banc 1980)). Pursuant to this rule, this court must dismiss the appeal if the trial court failed to distribute all the marital property discovered before the time for appeal has run. *Busch v. Busch*, 618 S.W.2d 244, 245 (Mo.App.1981). One of the primary purposes of the Dissolution of Marriage Act is to determine the parties' rights in their marital and separate property. *Wagner v. Wagner*, 823 S.W.2d 523, 525 (Mo.App.1992). The designation of property as marital or separate is "a necessary antecedent to a subsequent just division of marital property." *Id.* (quoting *Barron v. Barron*, 749 S.W.2d 16, 17 (Mo.App.1988)).

The question then is whether the CD was marital property which the trial court failed to distribute. Since extensive evidence concerning CD # 12049 was presented at trial, the trial court was well aware of its existence. Husband offered a copy of the certificate into evidence as an exhibit during the hearing, and it was also listed as a marital asset in his proposed division of property. Wife testified extensively about the existence of the certificate, the source of funds for its creation, and the ultimate disposition of CD # 12049. However, CD # 12049 was not among the various items of property distributed by the court's order, even though the trial court specifically recognized Wife's $5,000 debt to James and ordered her to assume and pay the debt.

■ Under § 452.330, the CD was presumed to be marital property because it was acquired by either spouse subsequent to the marriage and prior to a decree of dissolution. This is true regardless of whether title was "held individually or by the spouses in some form of coownership such as joint tenancy, tenancy in common, tenancy by the entirety, and community property." Section 452.330.3. On its face, CD # 12049 designates the depositors as joint tenants, shown as "James Luebbert or Judy Stratman or Harold Stratman," and makes the certificate payable to any depositor individually:

> Payable to said depositor, or, if more than one, to either or any of said depositors or the survivors or survivor, as joint tenants with right of survivorship, unless depositors are designated as tenants in common in which event it is payable to said depositors.

This language creates a joint tenancy between the designated co-depositors under the theory that the tenants jointly own one undivided estate. Section 362.470.1. *See also Maudlin v. Lang*, 867 S.W.2d 514, 516–17 (Mo. banc 1993); *Rushing v. Southern Mo. Bank*, 859 S.W.2d 211, 221 (Mo.App.1993).

As a result, Husband and Wife held an ownership interest in CD # 12049 which falls within the definition of marital property under § 452.330. *See Hanson,* 738 S.W.2d at 438–39 (not error for trial court to find bank accounts and certificates of deposit held jointly between parents and children as marital property); *Hubbs v. Hubbs,* 870 S.W.2d 901, 906–907 (Mo.App.1994)(funds from bank account held jointly by wife and son from different marriage were marital property).

■■■■ Having determined that the parties had an interest in CD # 12049 which was marital property, the analysis turns to whether § 452.330.1 mandates the trial court to distribute the certificate when it was no longer in existence at the time of the hearing on the division of property. It is not unusual for a spouse to dispose of or expend marital property or income prior to the proceeding to distribute property. The general rule is that a trial court may include the value of an expended asset in the division of marital property if the trial court believes the marital asset was squandered. *Witt v. Witt,* 930 S.W.2d 500, 505 (Mo.App.1996). But, there is no rule which mandates the trial court to include in its division of property the value of all marital property which was disposed of prior to the hearing for division of property. *See Endebrock v. Endebrock,* 916 S.W.2d 456, 458 (Mo.App.1996) (funds from bank account, depleted by wife during separation period before dissolution, were appropriately excluded from marital property division and equalization adjustment where husband presented no evidence indicating wife secreted or squandered marital property in anticipation of dissolution).

In this case, the facts, in the light most favorable to the trial court's judgment, are that Wife's son, James Luebbert, cashed the CD. As a joint-tenant, he had the legal right to do so. *Tepen,* 599 S.W.2d at 535. The evidence does not demonstrate that Wife "squandered" the proceeds of the CD by failing to liquidate the CD before her son did. The trial court did not err in exercising its discretion to exclude CD # 12049 from its division of the marital property. CD # 12049 did not constitute marital property which the trial court was required to distribute. Point five is denied.

■■■ Husband asserts in his sixth point that the trial court erred in failing to include as marital property the sum of $23,762 which is the amount of marital funds he claims was expended on Wife's separate real estate. These marital funds were allegedly used to pay for taxes, insurance, remodeling and a two-car garage addition which benefitted Wife's separate real estate.

Section 452.330.2(5) excepts from the definition of "marital property" "[t]he increase in value of property acquired prior to the marriage or pursuant to subdivisions (1) to (4) of this subsection, unless marital assets including labor, have contributed to such increases and then only to the extent of such contributions." To have a proportionate share of the increase in the value of Wife's separate real estate declared marital property, Husband must prove that marital assets or labor contributed to "acquiring" the increase in value. *Meservey v. Meservey,* 841 S.W.2d 240, 245–46 (Mo.App.1992).

Here, Husband presented evidence as to all the marital funds expended on Wife's separate property. Husband failed to prove, however, that these expenditures resulted in any increase in the property's value. The amount of the increase in value of Wife's separate property was essential to Husband's claim. *Id.* at 246 n. 3. The trial court did not err by not including as marital property the amount of marital funds expended for the benefit of Wife's separate real estate.

This court reverses the money judgment of $81,294.50 entered against Husband and in favor of Wife and, pursuant to Rule 84.14, enters a modified judgment. Husband is hereby ordered to pay Wife the sum of seventy-eight thousand seven hundred ninety-four dollars and fifty cents ($78,794.50) to equalize the division of property. The remaining provisions of the trial court's judgment dated September 7, 1995, including the terms for payment of the $78,794.50 judgment against Husband, are affirmed without modification.

All concur.