**Pamela A. McKOWN, Respondent,**

v.

**Billy Joe McKOWN, Appellant.**

No. WD 61682.

Missouri Court of Appeals, Western District.

June 24, 2003.

Michael J. Svetlic, Kansas City, MO, for Appellant.

Louis Angles, Excelsior Springs, MO, for Respondent.

Before ROBERT G. ULRICH, P.J., VICTOR C. HOWARD and THOMAS H. NEWTON, JJ.

THOMAS H. NEWTON, Judge.

## I. FACTUAL BACKGROUND

On April 7, 1981, Billy Joe McKown and Pamela Ann McKown were married. During the marriage, the couple had two children, Cody Joe McKown, born July 28, 1981, and Jordan Leah McKown, born August 22, 1987.

Ms. McKown filed a Petition for Dissolution of Marriage on March 27, 2001, in Clay County Circuit Court. On May 23, 2001, Ms. McKown filed a motion seeking primary physical custody of the children, a restraining order, preliminary injunction, support money and maintenance, attorney's fees, and court costs. In response, Mr. McKown filed a motion for temporary custody of the children, a restraining order, preliminary injunction, and support money. On June 18, 2001, the circuit court ruled on these motions, granting Mr. McKown temporary legal and physical custody of both children as the primary physical custodial parent subject to reasonable visitation rights to Ms. McKown. Ms. McKown was given joint legal and physical custody over Jordan McKown only, with Mr. McKown designated as the primary physical custodial parent. Moreover, Mr. McKown was awarded the sole temporary possession of the marital home, and Ms. McKown was ordered to vacate the premises.

This matter went to trial on February 26, 2002, in Clay County Circuit Court, the Honorable K. Elizabeth Davis presiding. At trial, both parties called witnesses to the stand and entered evidence into the record, supporting their respective Petitions. After hearing all of this evidence, the trial court issued a Judgment and Decree of Dissolution of Marriage on June 12, 2002. This judgment dissolved the parties' marriage and divided the parties' assets. Notably, Mr. McKown was awarded the couple's family residence located at 707 N. McCleary in Excelsior Springs because it was found that this home was "separate" property, it having been purchased by Mr. McKown prior to the marriage. However, the trial court found that Ms. McKown had "marital real estate equity" in that property in the sum of $23,000.00.

Additionally, this judgment contained a child custody order, in which both parties were awarded joint legal and physical custody of Jordan McKown, the only uneman-

cipated child in the relationship;[1] however, Mr. McKown was awarded the primary physical custody of Jordan McKown. Ms. McKown was awarded secondary physical custody, and a parenting plan was issued by the Court giving guidelines as to when visitation rights were to be exercised. Ms. McKown was not ordered to provide child support to either of the children.

Mr. McKown appeals the judgment awarding Ms. McKown a portion of the value of the family residence and the trial court's finding that Ms. McKown did not need to pay any child support to him.

## II. STANDARD OF REVIEW

The trial court has discretion in dividing marital property unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *In re Marriage of Woodson*, 92 S.W.3d 780, 785 (Mo. banc 2003). "An abuse of discretion occurs only if the decree is so arbitrary or unreasonable that it indicates indifference and lack of proper judicial consideration." *Id.*

## III. Legal Analysis

In Point I, Mr. McKown asserts that the trial court erred in awarding Ms. McKown a portion of the value of Mr. McKown's nonmarital property because the trial court erroneously declared and applied the law under the clear meaning of section 452.330.2(5).

▮▮▮▮ "Section 452.330 governs the disposition of property and debts in a dissolution of marriage proceeding and mandates a two-step process for their division and award." *Henning v. Henning*, 72 S.W.3d 241, 249 (Mo.App. W.D.2002). First, the trial court must set aside to each spouse his and her nonmarital property. *Id.* (citing § 452.330.1). Second, the trial court must divide the marital property and marital debts in such proportions as the court deems just after considering all relevant factors. *Id.* at 249–50. The trial court does have great flexibility and discretion in its division of property under section 452.330. *Cohen v. Cohen*, 73 S.W.3d 39, 53 (Mo.App. W.D.2002). And further, on appellate review, it is presumed that the trial court's division is correct. *Id.* The party challenging the property division has the burden of overcoming the presumption that the trial court's division was correct. *Id.* Here, the trial court classified the family residence as nonmarital and then awarded to Ms. McKown her "marital real estate equity." This approach is proper under *Hoffmann v. Hoffmann*, 676 S.W.2d 817, 824–25 (Mo. banc 1984).

▮▮▮▮ The trial court justified its award of $23,000 to Ms. McKown in this property by characterizing Ms. McKown's interest as "marital real estate equity" because both parties agreed that the family residence was nonmarital property when acquired. Mr. McKown bought the property, which later served as the family residence in 1979, two years before the McKowns were married. It is the general rule that property acquired by a spouse prior to marriage is that spouse's separate property upon dissolution of marriage. *Taylor v. Taylor*, 12 S.W.3d 340, 344 (Mo. App. W.D.2000). But, Mr. McKown owned the property for only two years before Mr. and Ms. McKown were married. Both Mr. and Ms. McKown occupied this residence for twenty years. The mortgage payments on the property were paid out of marital funds. The evidence shows that most of the increase in equity

---

1. The same rights were not conferred to Ms. McKown as it pertained to Cody McKown because the circuit court found that he was emancipated.

of the property occurred during the course of the twenty-year marriage.

■ Mr. McKown challenges the conclusion that Ms. McKown has *any* marital interest in the property. It is widely recognized that the increase in value of "separate property" can constitute "marital property" over time if marital assets are used to enhance the value of that property. *See* § 452.330.2(5) (stating that the increase in value of property acquired before marriage remains separate "unless marital assets including labor, have contributed to such increases and then only to the extent of such contributions"); *see also Stratman v. Stratman,* 948 S.W.2d 230, 239 (Mo.App. W.D.1997); *Meservey v. Meservey,* 841 S.W.2d 240, 245 (Mo.App. W.D.1992).

But *Stratman* and *Meservey* are both distinguishable from the present case because they did not involve a dispute over real estate where the mortgage had been paid from marital funds during the course of the marriage.

■ The "source of funds" rule established in *Hoffmann* was used to determine a spouse's interest in corporate stock. 676 S.W.2d at 825. The "source of funds" rule was also used in *Stratman,* but the dispute did not involve a mortgage, which was paid from marital funds. 948 S.W.2d at 239. There, the husband tried to show that marital funds were expended on the Wife's separate property, which led to an increase in the value of that property. *Id.* The evidence was insufficient to establish that the property had a marital property interest primarily because there was no evidence to show that the property had increased in value. *Id.* In the present case, the evidence shows that the property increased in value from $46,000 to the present value of $70,000, and in calculating the marital "equity," the trial court considered the two years that Mr. McKown owned the property prior to the marriage. In *Meser-*

*vey,* the disputed property was a farm, which had been inherited by Mr. Meservey, and the associated increase in value of the farm's corporate stock. 841 S.W.2d at 245. The property was not " 'acquired' as it [was] paid for" because Mr. Meservey owned it outright. *Id.* And to Ms. Meservey failed to show how her efforts had contributed to any increase in the value of the property. *Id.* at 246. While a marital "interest" in separate property can require proof that a spouse contributed substantial services towards the property which led to an increased value of that property, *Hoffmann,* 676 S.W.2d at 826, this type of proof is not needed in the present case when "the marital partners sacrifice marital funds ... in acquiring the increase." *Meservey,* 841 S.W.2d 240, 246.

Using the "source of funds" rule from *Hoffmann* in the present case, the key to the analysis is whether the property was wholly acquired prior to the marriage. 676 S.W.2d at 823. Property is considered "acquired" as it is paid for. *Id.* at 824. So, in this case, Ms. McKown is entitled to a marital interest in the property proportionate to the increase in value of the property as it was acquired through the use of marital funds. As in *Woolridge v. Woolridge,* Ms. McKown did not work outside the home for most of the marriage, the McKown marriage was of long duration and "under such circumstances an equal division of marital property would be anticipated and is what occurred here." 915 S.W.2d 372, 377 (Mo.App. W.D.1996).

Even applying *Stratman* and *Meservey,* Mr. McKown would be obligated to give Ms. McKown a portion of the increased equity in the property because the increase in value of the property was due not only to "general economic conditions," *Hoffmann,* 676 S.W.2d 817 at 824, but due to the fact, as shown in the evidence, that the mortgage, which was in both Mr. and

Ms. McKown's names, was paid out of their joint checking account using marital funds over a period of twenty years.

 Even though the residence was deeded only to Mr. McKown, when the deed does not include both spouses' names, the spouse who does not appear on the deed can be awarded an "increase in the value of the home since the date of the marriage." *Wilk v. Wilk*, 781 S.W.2d 217, 222 (Mo.App. E.D.1989). The marital estate can be granted an interest in the parties' residence to the extent of the increase in value when it is "attributable to an investment of marital funds." *R.D. v. J.D.*, 764 S.W.2d 744, 746 (Mo.App. E.D. 1989).

 Mr. McKown asserts that it was "his" salary which paid the mortgage, but this argument is unavailing because salary earned by a spouse during the marriage is characterized as marital. *Sumners v. Sumners*, 701 S.W.2d 720, 722 (Mo. banc 1985). Therefore, the fact that Mr. McKown's salary was used to pay the mortgage is not determinative in this case because his salary earned during the marriage was, by definition, marital property. § 452.330.

 Therefore, since most of the mortgage debt was paid during the course of this twenty year marriage, marital funds were used to pay the mortgage, both parties were liable for the mortgage, and the increase in the value of the property was presented at trial, Ms. McKown has met her burden of showing that the property was acquired as it was paid for with marital funds over the duration of twenty years. Hence, Ms. McKown is entitled to a portion of the increase in the value of that property. Moreover, in its judgment awarding Ms. McKown her equity in the family residence, the trial court did not abuse its discretion because the trial court

likely considered Ms. McKown's contributions as a homemaker and the respective post-marriage incomes of the parties. *Beckham v. Beckham*, 41 S.W.3d 908, 915 (Mo.App. W.D.2001). The trial court's findings are not so arbitrary or unreasonable that they indicate indifference and a lack of proper judicial consideration. *In re Marriage of Woodson*, 92 S.W.3d at 785. Point I is denied.

 In Point II, Mr. McKown asserts that the trial court erred in its denial of child support to him because the trial court failed to consider the relevant factors pursuant to section 452.340.8, RSMo 1998, and Supreme Court Rule 88.01 in that he was awarded primary physical custody of the minor child and Ms. McKown was employed at the time of the dissolution, has limited expenses, and possessed the financial ability to provide support. "In reviewing a circuit court's determination of child support, we will affirm it unless the court abused its discretion or erroneously applied the law." *Gatton v. Gatton*, 35 S.W.3d 930, 931 (Mo.App. W.D.2001). "We defer to the circuit court's decision unless the evidence is 'palpably insufficient' to support it." *Id.* (quoting *Held v. Reis*, 193 S.W.2d 17, 20 (Mo.1946)).

"In determining an award of child support in any proceeding, § 452.340.8 and Rule 88.01 require the trial court to follow the two-step procedure set forth in *Woolridge*, 915 S.W.2d at 379, which was approved by the Missouri Supreme Court in *Neal v. Neal*, 941 S.W.2d 501, 504 (Mo. banc 1997)." *Wood v. Wood*, 94 S.W.3d 397, 408 (Mo.App. W.D.2003). "In step one, the trial court determines for the record the presumed child support amount using Form 14." *Searcy v. Searcy*, 85 S.W.3d 95, 99 (Mo.App. W.D.2002). "While the Form 14 amount carries a presumption of correctness, the trial court need not award that amount automatically." *Id.*

"Thus, in step two, the trial court should consider whether to rebut the Form 14 amount as 'unjust or inappropriate' after considering all relevant factors." *Id.* at 100 (quoting *Douglas–Hill v. Hill,* 1 S.W.3d 613, 616 (Mo.App. W.D.1999)).

In the present case, the trial court made it clear in its judgment that it chose not to follow either party's Form 14 amount because it reasoned that they were, "pursuant to § 452.340.8, RSMo.1998, Supreme Court Rule 88.01; ... unjust and inappropriate." (emphasis added). However, in making that ruling, the trial court erred because it skipped the mandatory first step in this process: determining the presumed child support amount via Form 14. *Searcy,* 85 S.W.3d at 99. "The trial court can do its own Form 14 calculation by either completing a Form 14 worksheet and making it a part of the record or by articulating on the record how it calculated its Form 14 amount." *Wood,* 94 S.W.3d at 408. We have consistently held that, in some manner, the trial court is required as a matter of law to figure this presumed child support amount at the outset of this analysis, or adopt one of the parties' figures. *Id.* Our reasoning for this requirement can be found in *Woolridge:*

> Reading the statute and the rule together, we find Rule 88.01 requires a determination of the presumed correct child support amount pursuant to a correct Form 14 calculation in every case in order to insure that the child support guidelines are considered as mandated. Since there can be only one presumed correct child support amount in a given case, the statute and rule taken together clearly contemplate that the trial court

will make that determination using the Form 14 worksheets submitted by the parties as aids.... Rule 88.01 provides that the presumed correct child support amount may be rebutted upon a finding that it is unjust or inappropriate. Therefore, it is axiomatic that before there can be a "rebuttal" of the presumed correct child support amount, the amount must, in fact, be correctly calculated....Without the determination, there is nothing to rebut. The procedure set forth in the rule to rebut the Form 14 amount clearly contemplates the determination of one presumed correct child support amount in every case. As to why the trial court's determination of the correct Form 14 amount must appear in the record can be found in the necessity of making a record that properly frames the factual and legal issues permitting meaningful appellate review to avoid reversal and remand.

915 S.W.2d at 380.

In this case, there is no indication from the record that the trial court made a finding on the presumed correct child support amount. Here, without making such a finding, the trial court ruled that the parties' Form 14 child support calculations were "unjust and inappropriate." Without first making the mandatory initial finding of the presumed correct child support amount, the trial court erroneously applied the law. *Id.*[2] Point II is granted.

### IV. Conclusion

Accordingly, on Point I, this court affirms the decision of the trial court in all respects. On Point II, this matter must be

---

**2.** "Section 452.340.8 provides the presumed correct child support amount may be rebutted upon a finding that it is unjust or inappropriate after consideration of all relevant factors, including the factors set out in § 452.340.1." *Woolridge,* 915 S.W.2d at 379. But, as made

abundantly clear in *Woolridge,* the trial court has no such authority to "rebut" the presumed correct child support amount when the trial court fails to formally make a finding as to what that figure is. *Id.*

remanded for the trial court to make findings in a manner consistent with the aforementioned governing law.

ROBERT G. ULRICH, P.J., and VICTOR C. HOWARD, J., concur.