In re the MARRIAGE OF Scott Cory GOLDSTEIN and Jeanette Marie Goldstein.

Scott Cory Goldstein, Petitioner–Respondent,

v.

Jeanette Marie Goldstein, Respondent–Appellant.

No. SD 32111.

Missouri Court of Appeals, Southern District, Division One.

July 19, 2013.

Mark J. Millsap and J. Matthew Miller, Baird, Lightner, Millsap & Harpool, P.C., Springfield, MO, for Appellant.

W. Henry Johnson, Neosho, MO, for Respondent.

GARY W. LYNCH, P.J.

Jeanette Marie Goldstein ("Wife") appeals the dissolution judgment of the trial court in regard to the trial court's failure to make findings of fact as requested by Wife, its division of marital property and debts, and its entry of a parenting plan designating the address of Scott Cory Goldstein ("Husband") as the residential address of the parties' minor child for mailing and educational purposes. Finding that the trial court's findings of fact were not sufficient to allow for meaningful appellate review, we reverse the judgment and remand with directions.

### Factual and Procedural Background

Husband and Wife were married August 21, 1982, while Husband attended dental school and Wife worked toward a bachelor's degree in accounting at UMKC. Husband graduated in April 1985, and the parties purchased a dental practice in Anderson in October of that year. Husband moved to McDonald County while Wife remained in Kansas City until December 1985, when she finished her degree. In 1988, they bought an H & R Block tax preparation franchise in Anderson, and Wife ran that business exclusively. The parties built the marital home in Pineville and moved there in 2002.

Husband and Wife had two children; one son was emancipated and the other son was sixteen years old at the time of the dissolution action. Husband admitted to having a two-and-a-half-year extramarital affair in January 2010, and after unsuccessful attempts at counseling, the parties separated on May 17, 2010. Wife remained in the marital home while Husband moved to a separate residence. Husband petitioned for dissolution on May 26, 2010.

Husband petitioned for "joint legal and joint physical custody" of the parties' minor child and requested the trial court "make an appropriate award of a reasonable sum as and for child support[.]" Husband further alleged that neither party was entitled to maintenance, attorney fees, or costs.

Wife counter-petitioned, also requesting the trial court award "joint legal custody" to the parties, however, Wife requested her address be designated for mailing and educational purposes. She further requested "[a]ppropriate awards of child

support[,]" awards for maintenance, "attorney fees, expert fees, court costs, . . . expenses[,]" and "[a]n equitable division of the marital property[.]"

Before the start of the trial, on December 29, 2011, and the presentation of any evidence on this matter, Wife presented to the trial court for filing her Request for Findings of Fact and Conclusions of Law. Wife therein requested specific findings of fact and conclusions of law on six controverted issues as set forth below

1. Did [Wife] waste, squander or secret any monies as alleged by [Husband]? If so, what amount was wasted, squandered or secreted and how were the monies used by [Wife]?

2. Concerning any monies that [Husband] alleges were wasted, squandered or secreted by [Wife], did [Wife] use any of said monies for living expenses? If so, how much was used for [Wife's] living expenses?

3. Concerning any monies that [Husband] alleges were wasted, squandered or secreted by [Wife], did [Wife] use any of said monies for repair and improvements to the H & R Block office building? If so, how much was used for repair and improvements to the H & R Block office building?

4. Concerning any monies that [Husband] alleges were wasted, squandered or secreted by [Wife], did [Wife] use any of said monies for H & R Block business expenses? If so, how much was used for H & R Block business expenses?

5. Concerning any monies that [Husband] alleges were wasted, squandered or secreted by [Wife], did [Wife] use any of said monies for attorneys' fees and litigation costs? If so, how much was used for attorneys' fees and litigation costs?

6. Did [Wife] fail to provide an adequate explanation for the use of any of the funds that [Husband] alleges were wasted, squandered or secreted by [Wife]? If so, for how much of said funds did [Wife] fail to provide an adequate explanation such that a finding of waste, squandering or secreting would be substantiated?

After both parties presented evidence and rested, the trial concluded the next day, December 30, 2011.

According to a docket entry dated March 8, 2012, the trial court filed a copy of Wife's Request for Findings of Fact and Conclusions of Law with a handwritten notation in the space following her first request, item number 1, which reads "Yes, office remodel—rebuild[.]"

By another docket entry on that day, the trial court notified the parties of the following:

Court approved [Husband's] Ex. 11 Joint Custody Order. Court divides property as set out in [Husband's] Ex. 10. This division is not equal, but fair considering the conduct of the parties. [Husband's] affair was a main cause of the dissolution, but [Wife] spent almost 1/4 million dollars on office building remodel—to rebuild and the FMV of the building increased maybe $100,000. Each side to pay own attorney fee. Costs to [Husband]. No maintenance. Child support $0.00. [Husband's] Ex. 14b, each parent to pay half college bills. GS. Copy of docket entry to Attorneys.

The trial court filed its Judgment of Dissolution of Marriage on March 23, 2012, and awarded custody of the minor child to Wife and Husband "jointly pursuant to the Joint Legal and Physical Custody Order filed herein with [Husband] designated as the custodial parent for purposes of education and mailing." The trial court subsequently found "that it is in the best interest of the child that custody be award-

ed to [Husband], designated as the custodial parent for purposes of education and mailing."

Before its itemization of the division of property and debts awarded to each party, the trial court stated, "The Court makes the following disposition of property and the Court specifically finds that the affair of [Husband] was a main cause of the dissolution and that [Wife] spent almost [a] quarter of a million dollars on office building remodel, to rebuild and the fair property equally [sic] but the Court does intend to divide the property fairly concerning the above conduct."

In its judgment, the trial court acknowledged Wife's request for specific findings and conclusions, setting forth each of Wife's six enumerated requests. Following the first request, item number 1, the trial court entered the following: "FINDING: The Court finds that [Wife] squandered funds with regard to rebuilding and remodeling her office." After each subsequent request, the trial court responded, "FINDING: See # 1 above."

Wife timely filed a motion for a new trial or in the alternative, to amend the judgment. Therein, Wife alleged that the division of the marital property and debt was "not equitable in consideration of all of the evidence[ ]" and against the weight of the evidence and that the trial court erred in designating Husband's address as the residential address of their son. Wife further contended that the trial court erred in failing to make complete findings of fact as Wife requested before trial.

Following a hearing, the trial court denied Wife's motion for new trial or amendment of judgment. Wife timely appeals, presenting three points relied on.

*Discussion*

■ In her first point, Wife contends the trial court erred in failing to make specific findings of fact, as requested by Wife pursuant to Rule 73.01(c).[1] Under Point II, Wife challenges the trial court's division of marital property and debts of the parties, alleging it was inequitable and against the weight of the evidence. In her third point, Wife alleges trial court error in entering a parenting plan that designated Husband's home as the residential address of the minor child for mailing and education purposes, contending that the "award lacked evidentiary basis and is against the weight of the evidence[.]"

Point I is dispositive in this appeal, in that the trial court's failure to enter specific findings as requested by Wife impedes this Court's ability to determine whether the trial court's division of marital property and debts, in light of section 452.330[2] and challenged by Wife in her second point, was equitable and whether substantial evidence supported the trial court's judgment. Wife contends it was not, in that Husband was awarded sixty-two percent of the net assets, and Wife was awarded only thirty-eight percent. She further contends that Husband earns significantly more, he was awarded an IRA valued at $236,995.42 and an annuity valued at $1,084, while she was not awarded any retirement accounts, both had contributed to the acquisition of the marital property, there was no significant non-marital property to distribute, and the trial court specifically found that its division of the marital property was based, in part, on Husband's misconduct.

Wife alleges that the trial "court's failure to prepare specified findings of fact is

---

1. References to rules are to Missouri Court Rules (2012).

2. References to statutes are to RSMo 2000.

prejudicial to Wife and interferes with appellate review[.]" Wife argues:

Had the court properly responded to Wife's Request for Findings of Fact, the Court of Appeals could determine how much was spent on legitimate expenses and how much (if any) was spent illegitimately by Wife, and thereby determine if the [trial] court properly weighted the division of property heavily in favor of Husband. As the Judgment now stands, it is impossible to know the degree to which the [trial] court found that funds were improperly spent or 'squandered' by Wife. The [trial] court purportedly based its division of property on Wife's spending 'almost a quarter of a million dollars on office building remodel,' but even Husband does not allege facts to support such a conclusion....

Husband testified that Wife spent $140,000 on the work of remodeling and repairs of the H & R Block building in Anderson, Missouri.... Therefore, there is no evidence to support the trial court's finding that Wife 'spent almost a quarter of a million dollars' on the office building remodeling.... The court specifically stated that it was relying on its finding that Wife 'spent almost a quarter of a million dollars' on the office building work in dividing the property as it did....

Husband does not dispute or contest Wife's contention that the trial court's findings were not sufficient to allow review of her claims on appeal, but rather asks us to simply ignore the omission and view the evidence in the light most favorable to the judgment.

■ Rule 73.01(c) provides: "The court may, or if requested by a party *shall*, include in the opinion findings on the controverted fact issues specified by the party." (Emphasis added). Also relevant here, section 510.310.2 provides that when specifically requested by counsel, "the court *shall* [ ] include its findings on any of the principal controverted fact issues." (Emphasis added). If a party requests findings on specific controverted fact issues, the provisions of Rule 73.01(c) are mandatory. *Pittman v. Hendricks*, 399 S.W.3d 918, 919–20 (Mo.App.2013). "We must reverse the court's judgment where it fails to include specific findings of fact as requested by the parties when such failure materially affects the merits of the action or interferes with appellate review." *Id.*

Throughout their marriage, the parties jointly maintained multiple bank accounts, including one account for Husband's dental practice (account number ending in 333), one personal account (account number ending in 254), and two accounts for Wife's tax preparation business (account numbers ending in 982 and 325). Wife almost exclusively wrote checks from these accounts, and most of the parties' expenses were paid from the parties' dental practice account and personal account. This left considerable balances in Wife's business accounts.

On May 17 (the date the parties separated) and 18, 2010, Wife withdrew a total of $140,679.92 from the parties' tax preparation business account # 325 ($122,679.92 + 18,000.00) and deposited those funds into an account (account number ending in 997) that Wife established in her name alone. Also on those dates, Wife transferred $100,342.55 ($87,342.55 + 13,000.00) from the parties' tax preparation business account # 982 into another account (account number ending in 004), which Wife opened in her name alone. On May 17, wife transferred $20,000.00 from the parties' dental practice account # 993 and deposited that amount in the newly opened account # 004. From the $20,000.00, Wife paid $10,000.00 in estimated taxes toward her tax liability. In February and March

2011, Wife transferred a total of $68,745.95 ($43,606.71 + 18,102.16 + 7,037.08) from account # 982 into account # 004. The total of the funds transferred by Wife on these occasions amounted to $329,768.42. Wife contended that she transferred these funds from the parties' joint accounts to preserve assets and provide operating capital.

In October 2010, Wife was deposed, and at that time, she disclosed assets and liabilities. Account # 004 was not listed as an asset, and the balance in the other account Wife opened in her name, # 997, was $92,859.89, which was reduced to a balance of $8,788.43 on December 27, 2011, two days before trial. As of that date, the other account Wife had opened in her name that was not previously listed as an asset, # 004, had a $5,133.17 balance.

Husband claimed these funds were transferred and expended without his knowledge. Accordingly, he asked the trial court to consider the substantial funds transferred and expended by Wife during the parties' separation in its division of marital property and suggested he should receive a significantly greater portion of the marital assets. We note that Husband "at all times" had the burden of proof to demonstrate that Wife had squandered marital assets. *See Fitzwater v. Fitzwater*, 151 S.W.3d 135, 138 (Mo.App.2004).

Wife's evidence reflected the following. She spent $146,000 to $160,000 of the funds she transferred from the parties' joint accounts post-separation on repairs and renovations to her H & R Block office building. She had the roof repaired, the building was re-wired with two-phase wiring, walls were repaired and stabilized, and the back portion of the building was renovated and new offices added. Wife stated that the building is over 100 years old. She chose to have the building repaired because it was unsafe and in need of repair in order for her to continue doing business at that location. She could not move her business outside of Anderson due to the franchise agreement with H & R Block.

According to Wife, the remainder of the funds she transferred, $163,768.42, was expended as follows: $8,975 for construction of a storage shed at the marital residence; $22,000 for attorney and expert witness fees; approximately $104,000 in operating expenses, including payroll, taxes, utilities, and mortgage, for her tax preparation business; and the remainder went toward "general household and daily living expenses ... from May of 2010 to December of 2011." Wife further testified that she paid the monthly mortgage payment on the marital home from June 2011 to the end of 2011. Balances totaling $28,801 remained in accounts # 997 and # 004 at the time of trial.

Husband testified the parties paid $40,000 for the tax preparation business and they purchased the office building real estate for $25,000. Husband's appraiser valued the office building at $110,000 after remodeling and repairs. Husband testified Wife spent $140,000 on remodeling and repairing the office building. Husband contends there were, "perhaps," additional funds in the amount of $15,000 to $20,000 he was unable to locate, but he provided no further evidence as to any other expenditures by Wife during the parties' separation.

Against this evidentiary backdrop, the trial court's response to Wife's request for findings and conclusions was merely, "The court finds that [Wife] squandered funds with regard to rebuilding and remodeling her office." The trial court ignored Wife's requests for specific findings as to whether any of the funds were used by Wife for living expenses; if so, how much was used for such expenses; whether any of the

funds were used for H & R Block business expenses; if so, how much was used for such expenses; whether any of the funds were used for attorney fees and litigation costs; if so, how much was so used; whether Wife failed to provide an adequate explanation for the use of any of the funds; and, if so, for how much of said funds did Wife fail to provide an adequate explanation such that a finding of waste, squandering or secreting would be substantiated.

Nevertheless, the trial court explicitly based its division of marital property on its finding that "the affair of [Husband] was a main cause of the dissolution and that [Wife] spent almost [a] quarter of a million dollars on office building remodel[ ]" and based its division on "the above conduct." However, we find no substantial evidence supporting the trial court's finding that Wife "spent almost a quarter of a million dollars on office building remodel[.]" At best, the evidence supports that Wife spent $160,000 on remodeling the office building.

■ "The general rule is that a trial court may include the value of an expended asset in the division of marital property if the trial court believes the marital asset was squandered." *Stratman v. Stratman*, 948 S.W.2d 230, 239 (Mo.App.1997). "[T]here is no rule [that] mandates the trial court to include in its division of property the value of all marital property [that] was disposed of prior to the hearing for division of property." *Id.*

■ Wife claims she accounted for expenditures for legitimate and reasonable needs during the parties' separation and requested that the trial court set forth the specific amounts it found that she so spent. Wife was entitled to a specific finding on these issues because "marital property used by a spouse for his living expenses after separation and prior to the dissolution hearing is a legitimate expenditure of marital assets." *Jinks v. Jinks*, 120 S.W.3d 301, 308 (Mo.App.2003). "'Such expenditures have been held to be legitimate expenditures of marital assets, as would be the case if the parties had not separated.'" *Id.* (quoting *Conrad v. Conrad*, 76 S.W.3d 305, 315 (Mo.App.2002)).

In considering this appeal, we cannot discern a factual basis for the trial court's decision and, absent the required findings, cannot conclude that the trial court's judgment is sufficient for meaningful appellate review. *See Pittman*, 399 S.W.3d at 920–21. Accordingly, the judgment must be reversed and the case remanded to the trial court with directions to enter responsive findings of fact and conclusions of law on all of the issues specified by Wife in her requests for such findings made in accordance with Rule 73.01(c). *See id.; Adams v. Adams*, 108 S.W.3d 821, 832 (Mo.App. 2003) (citing *Conrad*, 76 S.W.3d at 315) (remanding case for trial court to fully develop the record and rule on the question of the existence of assets at time of trial or whether assets were legitimately expended on living expenses or marital debts.).

### Decision

The trial court's judgment is reversed, and the case is remanded for the trial court to enter findings of fact responsive to all of the specific issues as requested by Wife, to hold such other and further proceedings as the trial court deems necessary to accomplish that direction, and to enter a new judgment in accordance with those findings, all in a manner consistent with this opinion.

NANCY STEFFEN RAHMEYER and WILLIAM W. FRANCIS, JR., JJ., concur.